UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVE STAEHR, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Civil Action No. 3:04-CV-1740-CFD **(Consolidated)** |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., et al., | ) ) ) | MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................1

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............2

    A.  The Standards for Reviewing a Proposed Settlement for Preliminary Approval .....................................................................................................2

    B.  Preliminary Approval of the Settlement Should Be Granted...................................4

IV.  THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS, SUMMARY NOTICE, AND PROOF OF CLAIM ARE ADEQUATE ...........................6

V.  THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED...............7

    A.  The Proposed Settlement Class Satisfies the Rule 23 Requirements .....................8

        1.  Securities Cases Are Particularly Suited for Class Action Treatment .......................................................................................................8

        2.  The Standards for Class Certification ........................................................10

        3.  The Proposed Settlement Class Satisfies Rule 23(a) ................................11

            a.  The Proposed Settlement Class Is so Numerous that Joinder of All Members Is Impracticable .....................................................11

            b.  There Exist Questions of Law and Fact Common to the Members of the Settlement Class ....................................................12

            c.  The Claims of the Lead Plaintiffs Are Typical of the Settlement Class..........................................................................14

            d.  Lead Plaintiffs and Their Counsel Have Fairly and Adequately Prosecuted the Case on Behalf of the Proposed Settlement Class..........................................................................15

        4.  Lead Plaintiffs Satisfy the Rule 23(b)(3) Requirements...........................16

            a.  Common Questions of Law or Fact Predominate..........................17

            b.  A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy............................18

VI.  PROPOSED SCHEDULE ...................................................................................20

**Page**

VII.   CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................7, 17

*Baffa v. Donaldson*,
  222 F.3d 52 (2d Cir. 2000)...................................................................................15

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..............................................................................................8

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ..............................................................................18

*Cent. States Se. & Sw. Areas Health & Welfare Fund
v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)..................................................................11, 12, 14

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................4

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004).................................................................7

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)...................................................................................11

*Cosmas v. DelGiorno*,
  No. CV-94-1974, 1995 U.S. Dist. LEXIS 21146
  (E.D.N.Y. Feb. 8, 1995) .......................................................................................9

*Darquea v. Jarden Corp.*,
  No. 06 Civ. 722 (CLB), 2008 WL 622811
  (S.D.N.Y. Mar. 6, 2008) ...................................................................................7, 8

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).................................................................................5

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ...........................................................................17

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).............................................................................................10

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985).................................................................................9

Page

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995),
   *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996) ...................................................................................................8

*Epstein v. Moore*,
   No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450
   (D.N.J. June 13, 1988) ............................................................................................14

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ..................................................................................................8

*Escott v. Barchris Constr. Corp.*,
   340 F.2d 731 (2d Cir. 1965) ......................................................................................9

*Esplin v. Hirschi*,
   402 F.2d 94 (10th Cir. 1968) .....................................................................................9

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................................14

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   114 F.R.D. 48 (S.D.N.Y. 1987) .......................................................................13, 17

*Gerber v. Computer Assocs. Int'l*,
   No. 91 CV 3610 (SJ), 1995 U.S. Dist. LEXIS 21142
   (E.D.N.Y. Apr. 14, 1995) ..........................................................................11, 12, 14

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ...........................................................................7, 12, 20

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ....................................................................................................8

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ..................................................................................................8

*In re Amerifirst Sec. Litig.*,
   139 F.R.D. 423 (S.D. Fla. 1991) ............................................................................11

*In re AMF Bowling Sec. Litig.*,
   No. 99 Civ 3023 (DC), 2002 U.S. Dist. LEXIS 4949
   (S.D.N.Y. Mar. 26, 2002) .......................................................................................19

*In re Arakis Energy Corp. Sec. Litig.*,
   No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246
   (E.D.N.Y. Apr. 30, 1999) .............................................................................7, 17, 19

**Page**

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV 00-0717 (DGT), 2004 U.S. Dist. LEXIS 5165
    (E.D.N.Y. Mar. 30, 2004) .......................................................................9, 10

*In re Avon Sec. Litig.*,
    No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642
    (S.D.N.Y. Nov. 30, 1998) .......................................................................9, 10

*In re Baldwin-United Corp. Litig.*,
    122 F.R.D. 424 (S.D.N.Y. 1986) ............................................................13, 14

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ..........................................................9, 11, 19

*In re Crazy Eddie Sec. Litig.*,
    135 F.R.D. 39 (E.D.N.Y. 1991) ...................................................................15

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ................................................................5

*In re Currency Conversion Fee Antitrust Litig.*,
    No. MDL 1409, 2006 U.S. Dist. LEXIS 82167
    (S.D.N.Y. Nov. 8, 2006) ..........................................................................2, 3

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ........................................................16

*In re Enron Corp. Sec. Litig.*,
    No. H-01-3624, 2005 U.S. Dist. LEXIS 39867
    (S.D. Tex. Dec. 22, 2005) ...........................................................................16

*In re Frontier Ins. Group Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997) ...................................................................12

*In re Gaming Lottery Sec. Litig.*,
    58 F. Supp. 2d 62 (S.D.N.Y. 1999) ...............................................................9

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)...........................................................................10

*In re Interpublic Sec. Litig.*,
    No. 02 CIV. 6527 (DLC), 2003 U.S. Dist. LEXIS 19784
    (S.D.N.Y. Nov. 7, 2003) ..............................................................................13

**Page**

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936
    (E.D.N.Y. Dec. 10, 1997) .........................................................................................3

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................4

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..........................................................................2, 3

*In re NTL, Inc. Sec. Litig.*,
    No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346
    (S.D.N.Y. Feb. 14, 2006) .......................................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................................12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................3

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................................................................15

*In re Veeco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ...........................................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
    *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................................5

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) .................................................................................9

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972)................................................................................10

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)................................................................................17

*Ohman v. Kahn*,
    No. 87 Civ. 7117 (JFK), 1990 U.S. Dist. LEXIS 7781
    (S.D.N.Y. June 27, 1990)................................................................................10, 14

*Port Auth. Police Benevolent Ass'n v. Port Auth.*,
    698 F.2d 150 (2d Cir. 1983)..................................................................................12

Page

*Robbins v. Moore Med. Corp.*,
   No. 91 Civ. 3701(MEL), 1992 U.S. Dist. LEXIS 19467
   (S.D.N.Y. Dec. 21, 1992)..................................................................................................9

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
   (S.D.N.Y. June 7, 2005)....................................................................................................2

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004)..................................................................................................5

*Teachers' Ret. Sys. v. ACLN Ltd.*,
   No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927
   (S.D.N.Y. Dec. 27, 2004)................................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................................8

*Thomas v. NCO Fin. Sys., Inc.*,
   No. 00-5118, 2002 U.S. Dist. LEXIS 14157
   (E.D. Pa. Aug. 1, 2002)....................................................................................................3

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..............................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................................2

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)................................................................................................7

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
   Rule 23 .................................................................................................................. *passim*
   Rule 23(a)................................................................................................10, 11, 14, 16
   Rule 23(a)(1)..............................................................................................................11, 12
   Rule 23(a)(2)....................................................................................................................12
   Rule 23(a)(3)....................................................................................................................14
   Rule 23(a)(4)..............................................................................................................15, 16
   Rule 23(b) ........................................................................................................................16
   Rule 23(b)(3)........................................................................................................10, 16, 18
   Rule 23(c)(2)......................................................................................................................6
   Rule 23(e).............................................................................................................................6
   Rule 23(e)(1).......................................................................................................................6

Page

## SECONDARY AUTHORITIES

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2002)
§23.85[3].................................................................................................................6

3B James Wm. Moore, *Moore's Federal Practice* (2d ed. 1996)
¶ 23.80..................................................................................................................4

Stephanie Plancich, PhD and Svetlana Starykh,
*2008 Trends in Securities Class Actions*
(NERA Dec. 2008)...............................................................................................5

*Manual for Complex Litigation* (3d ed. 1995)
§30.41 ..................................................................................................................3

*Manual for Complex Litigation* (4th ed. 2004)
§21.162.................................................................................................................3

*Manual for Complex Litigation* (4th ed. 2004)
§21.633.................................................................................................................6

## I.     INTRODUCTION

Lead Plaintiffs, Communications Workers of America Plan for Employees' Pensions and Death Benefits and Alaska Laborers Employers Retirement Fund (collectively, "Lead Plaintiffs"), by and through their counsel ("Lead Counsel"), respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement of the captioned action.  The proposed Settlement provides a recovery of $3,850,000 in cash to resolve this Litigation against all Defendants.  The terms of the Settlement are contained in the Stipulation of Settlement dated as of August 17, 2009 and filed on August 28, 2009 (the "Stipulation").

By this motion, Lead Plaintiffs seek entry of an order: 1) granting preliminary approval of the proposed Settlement; 2) approving the form and manner of providing notice of the proposed Settlement to Members of the Settlement Class; 3) setting a schedule of various deadlines leading up to the fairness hearing; and 4) setting a hearing date for approval of the Settlement (the "Final Approval Hearing").

For the reasons discussed below, the proposed Settlement is a good result for the Settlement Class, is fair, reasonable, and adequate under the governing standards, and warrants preliminary approval.

## II.     BACKGROUND

This securities fraud class action was brought on behalf of investors who purchased The Hartford Financial Services Group, Inc. ("The Harford") common stock at allegedly inflated prices during the period between August 6, 2003 and October 13, 2004 (the "Settlement Class Period").

In summary, Lead Plaintiffs assert that Defendants misled investors about The Hartford's business performance and failed to disclose that The Hartford participated in contingent commission kickback arrangements with brokers, through which The Harford would pay brokers in exchange for brokers steering business to The Hartford.  Lead Plaintiffs allege that Defendants' actions allowed them to make reports of strong growth and high retention rates, in turn causing The Harford's stock

price to rise dramatically throughout the Settlement Class Period. Lead Plaintiffs contend these actions resulted in the artificial inflation of The Hartford's stock prices during the Settlement Class Period and thereby caused damage to the Settlement Class.

Following initiation of the lawsuit, appointment of Lead Plaintiffs, and the filing of a consolidated complaint, Defendants filed a motion to dismiss. On July 13, 2006, the Court dismissed the complaint, holding that the statute of limitations had run and Lead Plaintiffs' claims were time barred. On March 17, 2008, the Second Circuit issued an opinion reversing the dismissal and remanding the action to the Court for further proceedings. The Court requested supplemental briefing on the remaining unresolved issues; however, the parties agreed to postpone this briefing to participate in mediation. Ultimately, the parties reached the Settlement contained in the Stipulation.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

At the Final Approval Hearing, the Court will have before it extensive papers submitted in support of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Litigation. At this juncture, however, Lead Plaintiffs request the Court to grant preliminary approval of the Settlement.

### A. The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval. In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2006 U.S. Dist. LEXIS 82167, at *18 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *15-*16 (S.D.N.Y. June 7, 2005); *In re NASDAQ Mkt.-Makers Antitrust*

*Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*") ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . . In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.") (citations omitted). Courts are afforded wide discretion in determining what information to consider at this preliminary stage, and this initial assessment can be made on the basis of information already known to the court. *Manual for Complex Litigation* §21.162 (4th ed. 2004).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted. *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *Currency Conversion*, 2006 U.S. Dist. LEXIS 82167, at *18; *In re Med. X-Ray Film Antitrust Litig*., No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement[]"); *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval.'") (citation omitted). "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.

At the preliminary approval stage, the court does not make a final determination of the merits of the proposed settlement. *Prudential*, 163 F.R.D. at 210; *Thomas v. NCO Fin. Sys., Inc*., No. 00-5118, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. Aug. 1, 2002). Full evaluation is made at the final approval stage, after notice of the settlement has been given to the members of the class and class members have had an opportunity to voice their views of the settlement. *Prudential*, 163

F.R.D. at 210; *see also* 3B James Wm. Moore, *Moore's Federal Practice* ¶ 23.80 [2.-1], at 23-479 (2d ed. 1996).

A strong initial presumption of fairness attaches to a proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

**B.     Preliminary Approval of the Settlement Should Be Granted**

First, the proposed Settlement is the product of arm's-length negotiations by counsel with extensive experience in complex class action litigation. The resulting Settlement is the product of significant give and take by both sides and was reached after participation in mediation with Robert Meyer. Mr. Meyer is an experienced mediator who has been involved with many high profile mediations and currently serves as the chair of Loeb & Loeb's Professional Services Litigation Practices Group.

Second, an evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of the settling parties. Lead Counsel submit that the proposed Settlement reflects concessions by the parties that are reasonable and fair, and that the Settlement is in the best interests of the Settlement Class. This case has been hard, but fairly, fought by both sides. While Lead Counsel assert that they would produce evidence at trial that would establish Defendants' liability, Defendants assert, with equal conviction, that they would prevail should this case go to trial. Moreover, this case presents a number of complex issues, and thus the risks and costs of further litigating the case through discovery, summary judgment, trial, and appeal are significant. The proposed Settlement eliminates these risks and under all the circumstances provides a good recovery for the Settlement Class. Lead Counsel estimate that the Settlement

represents about 5.1% of maximum recoverable damages if the Lead Plaintiffs were to prevail on all issues, and all current claims were upheld through trial and appeals. This Settlement is well within the range of reasonableness. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was 6% of the potential recovery). *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *15 (S.D.N.Y. May 14, 2004) (citing *Grinnell*, 495 F.2d at 455). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). In addition, the estimated recovery in this case is higher than the average recovery in class action settlements. A recent study by National Economic Research Associates states that in 2008, the median ratio of settlement value to investor losses was 2.7%. *See* Stephanie Plancich, PhD and Svetlana Starykh, *2008 Trends in Securities Class Actions*, at 14 (NERA Dec. 2008). Therefore, when measured against the results in comparable cases, Lead Counsel achieved a superior recovery for Settlement Class Members.

Accordingly, preliminary approval of the Settlement should be granted and notice to Settlement Class Members permitted. Defendants have put forward significant defenses to liability, specifically with respect to loss causation, that if accepted by the Court, would result in no recovery for Settlement Class Members. Therefore, given the significant risks of establishing liability and damages, settlement is the proper course at this time.

Finally, significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class. Lead Counsel fully support the Settlement and it is their informed opinion that, given the uncertainty and substantial expense of pursuing this matter through

continued litigation, the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

At this juncture, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable, and adequate. The Court is being asked to permit notice of the terms of the Settlement to be sent to the Settlement Class and schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider the fairness of the Settlement, Lead Counsel's request for an award of fees and expenses, and any expressed views by Settlement Class Members on these issues. 5 James Wm. Moore, *Moore's Federal Practice* §23.85[3], at 23-353 to 23-354 (3d ed. 2002). Lead Counsel recommend that the Settlement be preliminarily approved and the accompanying preliminary approval order be entered.

## IV.    THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS, SUMMARY NOTICE, AND PROOF OF CLAIM ARE ADEQUATE

Federal Rule of Civil Procedure 23(e)(1) requires that class members receive notice of any proposed settlement before final approval by the court. *Manual for Complex Litigation*, *supra*, §21.633, at 321-22. Lead Counsel respectfully submit that the proposed notices, which are annexed as Exhibits A-1 and A-3 to the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, submitted herewith, are adequate. If approved by the Court, the notice in the form of Exhibit A-1, along with the Proof of Claim in the form of Exhibit A-2, will be sent by First-Class Mail to each Settlement Class Member identified from The Hartford's transfer records as purchasers of The Hartford's common stock during the Settlement Class Period. In addition, summary notice in the form of Exhibit A-3 will be published in *Investor's Business Daily* within three (3) days of the mailing of the notice.

As required by Federal Rule of Civil Procedure 23(c)(2), the notice will inform Settlement Class Members of the claims alleged in the Litigation, the terms of the proposed Settlement, and their rights as Settlement Class Members to opt out of or object to the Settlement, or otherwise

object to the Plan of Allocation and/or the proposed attorneys' fees and expenses. *See Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("'Due process requires that the notice to class members "fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."'") (citations omitted); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Lastly, as part of the preliminary approval of the Settlement, Lead Counsel also respectfully request the appointment of Gilardi & Co. LLC ("Gilardi") as Claims Administrator. The Claims Administrator will be responsible for, among other things, mailing the notice to Settlement Class Members, publishing the summary notice, reviewing claims, and mailing distribution checks. Gilardi has extensive experience in settlement administration and will adequately fulfill its duties in this matter.

## V. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED

The preliminary approval process is also utilized to provisionally certify a class when a class has not been previously certified by the court. The parties seek certification, for settlement purposes only. In the settlement context, class certification criteria are easily met because the class is unified by a common interest in a reasonable recovery. For the reasons explained below, there is no doubt that the Settlement Class meets all of the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure and should be certified.

Class certification in this securities fraud class action is consistent with long-established precedent in the Second Circuit and the United States Supreme Court. *See, e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968); *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811 (S.D.N.Y. Mar. 6, 2008); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *17 (E.D.N.Y. Apr. 30, 1999) (observing that "the Second Circuit has expressed a strong preference for

use of the class action device in resolving securities law claims"). Here, Lead Plaintiffs, like all other putative class members, seek to prove a uniform and concerted common course of wrongful conduct with respect to Defendants' alleged materially false and misleading statements made during the Settlement Class Period. Lead Plaintiffs, through Court-appointed Lead Counsel, have thus far successfully prosecuted this Litigation on behalf of the proposed Settlement Class by, among other things, investigating, researching, and drafting the complaint, engaging in extensive investigation, obtaining a reversal of the ruling on statute of limitations from the Second Circuit, and reaching the proposed Settlement.

Because the benefits of the underlying litigation apply equally to the Settlement Class as a whole and, as set forth in detail below, because this open-market securities fraud action satisfies all applicable requirements under Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully request this Court to certify the Settlement Class for purposes of effectuating settlement.

### A.    The Proposed Settlement Class Satisfies the Rule 23 Requirements

#### 1.    Securities Cases Are Particularly Suited for Class Action Treatment

"Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981), and have been recognized repeatedly as an important means of enforcing the federal securities laws. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320 n.4 (2007); *Basic Inc. v. Levinson*, 485 U.S. 224, 230-32 (1988); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976); *Darquea*, 2008 WL 622811; *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (holding that securities actions alleging misstatements or omissions fit the requirements of Rule 23 "like a glove").

Rule 23 allows for the effective enforcement of the securities laws for large numbers of investors who have suffered injuries but do not have a sufficient economic interest to incur the expense or inconvenience of an individual lawsuit. *See, e.g.*, *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). As a result, securities law claims are routinely found to be appropriate for class treatment. *See, e.g.*, *In re Ashanti Goldfields Sec. Litig.*, No. CV 00-0717 (DGT), 2004 U.S. Dist. LEXIS 5165 (E.D.N.Y. Mar. 30, 2004); *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62 (S.D.N.Y. 1999); *In re Avon Sec. Litig.*, No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642 (S.D.N.Y. Nov. 30, 1998); *Cosmas v. DelGiorno*, No. CV-94-1974, 1995 U.S. Dist. LEXIS 21146 (E.D.N.Y. Feb. 8, 1995); *Robbins v. Moore Med. Corp.*, No. 91 Civ. 3701(MEL), 1992 U.S. Dist. LEXIS 19467 (S.D.N.Y. Dec. 21, 1992).

Furthermore, by providing a single forum in which to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (holding that "'the effectiveness of the securities laws may depend in large measure on the application of the class action device'") (citation omitted); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Rule 23, therefore, is broadly structured so as to facilitate certification of class actions. "Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *see also Eisenberg*, 766 F.2d at 785 ("'The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.'") (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968)).

### 2.    The Standards for Class Certification

"[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met." *In re Initial Pub. Offering Sec. Litig. (*"*IPO*"*)*, 471 F.3d 24, 41 (2d Cir. 2006). In making those determinations, the Second Circuit has instructed courts to be "mindful of the admonition of liberality toward demands for class suit status in securities litigation." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972); *Ashanti*, 2004 U.S. Dist. LEXIS 5165, at *32 ("A liberal standard is in accord with the Second Circuit's preference for the use of class actions in securities law claims."); *Avon*, 1998 U.S. Dist. LEXIS 18642, at *13 ("In light of the importance of the class action device in securities litigation, courts in this circuit apply Rule 23 according to a liberal standard."); *Ohman v. Kahn*, No. 87 Civ. 7117 (JFK), 1990 U.S. Dist. LEXIS 7781, at *3 (S.D.N.Y. June 27, 1990) ("Rule 23's factors 'are to be construed liberally' . . . when the proposed class includes alleged victims of securities fraud.") (citation omitted).

Thus, in considering a class certification motion, a court will focus only on whether the prerequisites of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). While a court may resolve factual issues concerning the prerequisites of Rule 23 when those issues overlap with issues relating to the merits (*IPO*, 471 F.3d at 41), here there are no merits-based issues that impact the Court's consideration of class certification.

As demonstrated below, Lead Plaintiffs satisfy the prerequisites of Rule 23(a) and the requirement of Rule 23(b)(3), in that common questions of law and fact predominate and a class action is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the securities laws. Class certification for the purposes of effectuating the parties' Settlement is therefore appropriate, and the Court should certify the Settlement Class.

3.     **The Proposed Settlement Class Satisfies Rule 23(a)**

a.     **The Proposed Settlement Class Is so Numerous that Joinder of All Members Is Impracticable**

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. Fed. R. Civ. P. 23(a)(1). Rule 23 does not require joinder to be impossible, but "the difficulty or inconvenience of joining all members of the class [must] make [the] use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

To fulfill its obligation to establish numerosity, a plaintiff need not allege the exact number or identity of class members. Rather, courts "'may make common sense assumptions to support a finding of numerosity.'" *Blech*, 187 F.R.D. at 103 (citation omitted); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346, at *18 (S.D.N.Y. Feb. 14, 2006) ("'Although precise calculation of the number of class members is not required, . . . it is permissible for the court to rely on reasonable inferences drawn from available facts.'") (citation omitted); *In re NTL Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK), 2006 U.S. Dist. LEXIS 76959, at *3 (S.D.N.Y. Mar. 9, 2006) (granting certification). Accordingly, "the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits, such as the one here, involving nationally traded securities." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991).

In fact, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, 'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *Teachers' Ret. Sys. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, at *10 (S.D.N.Y. Dec. 27, 2004) (citation omitted); *Gerber v. Computer Assocs. Int'l*, No. 91 CV 3610 (SJ), 1995 U.S. Dist. LEXIS 21142, at

- 11 -

*7 (E.D.N.Y. Apr. 14, 1995) ("[Defendants'] common stock was listed and actively traded on the New York Stock Exchange; therefore, it is likely that [defendants'] stockholders are not concentrated in any one geographic location, but rather, are widely dispersed. Hence, given that there will be a variety of residences and numerous claims, joinder would be impractical.") (citing *Green*, 406 F.2d at 298).

The Settlement Class satisfies the numerosity requirement. There were 293 million shares of common stock outstanding during the Settlement Class Period, held by thousands of shareholders. Accordingly, Lead Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

> **b.     There Exist Questions of Law and Fact Common to the Members of the Settlement Class**

Rule 23(a)(2) requires that "'plaintiffs' grievances share a common question of law or of fact.'" *Cent. States*, 504 F.3d at 245 (citation omitted). Evidentiary proof of Lead Plaintiffs' claims is necessarily common to all Members of the Settlement Class. Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts." *Gerber*, 1995 U.S. Dist. LEXIS 21142, at *7-*8 (quoting *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153-54 (2d Cir. 1983)); *see also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail.").

Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in written publications circulated to the investing public, press releases and statements provided to the investment community and the media, and investor conference calls. *See, e.g.*, *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997)

(disseminating statements that omitted or misrepresented material facts deemed common questions). Indeed, among the many questions of fact or law common to Members of the Settlement Class are:

(a)     whether the federal securities laws were violated by Defendants' acts;

(b)     whether statements made by Defendants during the Settlement Class Period misrepresented material facts about the business, operations, and financial results of The Hartford; and

(c)     whether the Members of the Settlement Class have sustained damages and, if so, the proper measure of damages.

The misrepresentations alleged here are of the sort that courts routinely hold to satisfy the "common question" requirement. *See, e.g.*, *In re Interpublic Sec. Litig.*, No. 02 CIV. 6527 (DLC), 2003 U.S. Dist. LEXIS 19784, at *7-*8 (S.D.N.Y. Nov. 7, 2003) ("Plaintiffs have raised a number of common issues of law and fact.  Among them are whether [defendants'] public filings and statements contained material misstatements, whether the defendants acted knowingly or with reckless disregard for the truth in misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements."); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y. 1986) ("The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication.  Essentially, this is a course of conduct case, which as pled satisfies the commonality requirement of Rule 23."); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) ("The liability issue in this action will concern defendant's alleged duty to disclose and the materiality of the alleged omission. . . . [P]laintiffs have shown these issues to be common to the class.").

The alleged misrepresentations, which form the basis of Lead Plaintiffs' claims, are necessarily common to all Members of the proposed Settlement Class. Thus, the commonality requirement is satisfied.

### c.    The Claims of the Lead Plaintiffs Are Typical of the Settlement Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."[1] The Second Circuit has held that the typicality requirement is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States*, 504 F.3d at 245 (citation omitted). The claims here satisfy the typicality requirement in that they all arise from the same false and misleading statements and require similar arguments by Settlement Class Members concerning liability.

In order to meet the typicality requirement, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'" *Gerber*, 1995 U.S. Dist. LEXIS 21142, at *8-*9 (quoting *Epstein v. Moore*, No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450 (D.N.J. June 13, 1988)). Thus:

> Because this [typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.

*Baldwin-United*, 122 F.R.D. at 428.

---

[1]    The Supreme Court noted that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *accord Ohman*, 1990 U.S. Dist. LEXIS 7781, at *10 ("The typicality requirement of Rule 23(a)(3) is a close cousin of the commonality requirement."). Accordingly, inasmuch as commonality has been established, typicality has been established as well.

Lead Plaintiffs have claims that are not only similar, but virtually identical, to those of the Members of the Settlement Class. All Members of the Settlement Class seek to prove that Defendants made materially false and misleading statements during the Settlement Class Period and failed to disclose material adverse facts about The Hartford's business. As such, Lead Plaintiffs and the other Members of the Settlement Class allege injury by the same course of conduct by the Defendants. Moreover, the damages that they seek arise from the purchase of The Hartford stock at prices that they allege were artificially inflated as a result of Defendants' false and misleading statements, and the subsequent decline in the prices of The Hartford stock when the alleged wrongdoing was revealed. Thus, Lead Plaintiffs stand in precisely the same position as other purchasers of The Hartford's stock during the Settlement Class Period. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("[T]he element of typicality is met because the class members have been allegedly harmed by the same course of conduct [--] the distribution of false and misleading information which artificially inflated the stock."). Therefore, as in *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39 (E.D.N.Y. 1991):

> Plaintiffs' claims are typical of those of absent class members. They allege injury resulting from the same course of conduct that injured the absent class members and are based on the same theories of recovery.

*Id.* at 40. Accordingly, Lead Plaintiffs' claims are typical of those of the Settlement Class.

### d. Lead Plaintiffs and Their Counsel Have Fairly and Adequately Prosecuted the Case on Behalf of the Proposed Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement is met if a plaintiff does not have interests that are antagonistic to those of the class, and his chosen counsel is qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).

Lead Plaintiffs satisfy both prongs of the adequacy test. Indeed, they already have successfully represented the interests of the proposed Settlement Class and demonstrated their

- 15 -

adequacy to prosecute this action. Moreover, none of Lead Plaintiffs' interests are antagonistic to those of the Settlement Class. As discussed above, all Members of the Settlement Class allege claims arising from the same wrongful conduct and are based on the same legal theories as the claims advanced by the Lead Plaintiffs. Lead Plaintiffs are committed to the vigorous prosecution of this Litigation. The interests of the other Members of the Settlement Class, therefore, are protected by Lead Plaintiffs, as they have been since the inception of this Litigation.

As to the second prong regarding adequacy of counsel, Lead Plaintiffs have retained the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as Lead Counsel for the proposed Settlement Class, a firm that has substantial experience in the prosecution of securities class actions. For example, among other noteworthy securities fraud cases, Coughlin Stoia served as sole lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia obtained recoveries to date that collectively represent the largest recovery ever obtained in a putative shareholder class action. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Coughlin Stoia is clearly qualified to represent the Settlement Class and, along with Lead Plaintiffs, have vigorously protected the interests of the proposed Settlement Class, resulting in the proposed Settlement of $3.85 million in cash. Thus, the requirements of Rule 23(a)(4) are satisfied.

### 4.    Lead Plaintiffs Satisfy the Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), the present action also satisfies the requirements of Rule 23(b). Rule 23(b)(3) requires proposed class representatives to establish that common questions of law or fact predominate over any questions affecting only individual members,

and that a class action is superior to other available means of adjudication. Here, common questions of law and fact predominate, and a class action is the superior (if not the only) method available to fairly and efficiently litigate this securities fraud lawsuit.

### a.     Common Questions of Law or Fact Predominate

It is well established that in determining whether common questions predominate, a court's inquiry should be directed primarily toward whether the issue of liability is common to members of the class. Indeed, "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Genden*, 114 F.R.D. at 52 ("When determining whether common questions predominate courts 'focus on the liability issue . . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions.'") (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

The Supreme Court has noted that the predominance requirement "is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prods.*, 521 U.S. at 625. In addition, courts have recognized that common issues of law and fact will generally predominate in actions alleging that materially false representations were made to large groups of investors. *See, e.g.*, *Arakis Energy*, 1999 U.S. Dist. LEXIS 22246, at *37 ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."). Where, as here, a complaint alleges that the defendants have made false and misleading representations, the issues of law and fact that flow from that conduct predominate over any individual issues, rendering class treatment appropriate:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (citations omitted).

As noted in the discussion of commonality, above, the nature of this case and the elements of Lead Plaintiffs' claims involve issues primarily focusing on Defendants' alleged misrepresentations – in short, Defendants' alleged liability to the proposed Settlement Class. The complaint alleges that Defendants issued materially false and misleading statements during the Settlement Class Period regarding, among other things, The Hartford's business. Moreover, the complaint alleges that Defendants pursued a common course of conduct that injured Lead Plaintiffs and the other Members of the Settlement Class. Thus, all Members of the Settlement Class are substantially – if not identically – situated with respect to those claims. In this case, it is difficult to discern any liability issues that are not common to the claims of each Member of the Settlement Class. Once common questions of liability are resolved, all that remains is the ministerial act of computing the amount of damages suffered by each Settlement Class Member. Thus, the predominance requirement is satisfied.

### b.    A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy

Not only do common questions predominate in the present litigation, but, as further required by Rule 23(b)(3), "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23 (b)(3) identifies factors to be considered in making a "superiority" determination:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

In this Litigation, the interest of Members of the Settlement Class in individually controlling the prosecution of separate actions is minimal, because the costs and expenses of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive. Thus, the first superiority factor is satisfied. *See Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient").

In addition, Lead Plaintiffs are not aware of any similar individual suits currently pending against Defendants. As such, there is no dispute that this Court is a desirable forum for concentrating the litigation of Settlement Class Members' claims. *See In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949, at *26 (S.D.N.Y. Mar. 26, 2002) ("For each investor to litigate individually 'would risk disparate results among those seeking redress, . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'") (citation omitted); *Arakis Energy*, 1999 U.S. Dist. LEXIS 22246, at *38 ("In addition, were plaintiffs required to bring individual actions, the potential for duplicative litigation and consequent waste of judicial and party resources would be significant."). Thus, the second and third superiority factors are satisfied.

Finally, Lead Plaintiffs do not envision any significant difficulties likely to be encountered in the management of this case as a class action or the administration of the proposed Settlement. This Litigation is appropriate for class treatment, embodying all of the hallmarks, both in form and in substance, of the types of securities actions that are routinely certified in this Circuit and elsewhere.

Thus, as the Second Circuit has recognized, a class action is superior to other available methods –

particularly duplicative individual lawsuits – for the fair and efficient adjudication of a controversy

affecting a large number of securities holders injured by violations of the federal securities laws:

> [A] class action [in a federal securities action] may well be the appropriate means for
> expeditious litigation of the issues, because a large number of individuals may have
> been injured, although no one person may have been damaged to a degree which
> would have induced him to institute litigation solely on his own behalf.

*Green*, 406 F.2d at 296.

## VI.    PROPOSED SCHEDULE

Lead Plaintiffs propose the following schedule:

| | |
|---|---|
| Notice mailed to Settlement Class Members ("Notice Date") | 10 days from preliminary approval |
| Summary Notice published | 3 days from Notice Date |
| Last day to request exclusion from or object to Settlement | 14 days prior to Final Approval Hearing |
| Last day for Settlement Class Members to file Proofs of Claim | 90 days from Notice Date |
| Date by which to file papers in support of Settlement, Plan of Allocation, and request for attorneys' fees and expenses | 21 calendar days prior to Final Approval Hearing |
| Date by which to file reply papers in support of Settlement, Plan of Allocation, and request for attorneys' fees and expenses | 7 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | Approximately 70 days from Notice Date, at the Court's convenience |

This schedule is similar to those used in numerous class action settlements and provides due

process to Settlement Class Members with respect to their rights concerning the Settlement.

## VII.    CONCLUSION

Lead Plaintiffs, by and through their counsel, respectfully request approval of this unopposed

motion for an order preliminarily approving the proposed Settlement, directing notice be sent to all

Settlement Class Members and summary notice be published, certifying the Settlement Class, and

setting a date for the Final Approval Hearing.

DATED:  September 17, 2009                    Respectfully submitted,

                                              SCOTT + SCOTT LLP
                                              DAVID R. SCOTT (CT16080)
                                              ERIN GREEN COMITE (CT24886)
                                              108 Norwich Avenue
                                              Colchester, CT  06415
                                              Telephone:  860/537-3818
                                              860/537-4432 (fax)

                                              Liaison Counsel

                                              COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
                                              JOY ANN BULL
                                              TOR GRONBORG (phv0044)
                                              DEBRA J. WYMAN


                                                     s/ Joy Ann Bull
                                              _____
                                                    JOY ANN BULL

                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)

                                              COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
                                              SAMUEL H. RUDMAN
                                              58 South Service Road, Suite 200
                                              Melville, NY  11747
                                              Telephone:  631/367-7100
                                              631/367-1173 (fax)

                                              Lead Counsel for Plaintiffs

Document1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on September 17, 2009.

s/ Joy Ann Bull
JOY ANN BULL

COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:joyb@csgrr.com

# Mailing Information for a Case 3:04-cv-01740-CFD

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Elias A. Alexiades**
  elia@alexiades.com

- **Jack C. Auspitz**
  jauspitz@mofo.com

- **Joy Ann Bull**
  joyb@csgrr.com

- **Erin Green Comite**
  ecomite@scott-scott.com,cmcgowan@scott-scott.com,jderrico@scott-scott.com

- **Timothy Andrew Diemand**
  tdiemand@wiggin.com

- **Tor Gronborg**
  torg@csgrr.com,e_file_sd@csgrr.com

- **Patrick A. Klingman**
  pklingman@sfmslaw.com

- **Jamie A. Levitt**
  jlevitt@mofo.com

- **James E. Miller**
  jmiller@sfmslaw.com

- **Kyle W. K. Mooney**
  KMooney@mofo.com

- **Shane Rowley**
  srowley@faruqilaw.com

- **David Randell Scott**
  drscott@scott-scott.com,cmcgowan@scott-scott.com,efile@scott-scott.com

- **Debra Wyman**
  debraw@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Manual List

*Steve Staehr v. The Hartford Financial Services Group, Inc., et al.*
Civil Action No. 3:04-CV-1740-CFD

Marc A. Topaz
BARROWAY TOPAZ KESSLER
   MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087

Samuel H. Rudman
COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747

Arthur L. Shingler III
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego, CA  92101