UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVE STAEHR, On Behalf of Himself and All Others Similarly Situated, | Civil Action No. 3:04-CV-1740-CFD **(Consolidated)** |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., et al., | FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF |
| Defendants. | ALLOCATION OF SETTLEMENT PROCEEDS |

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT .......................................................................................1

II.     HISTORY AND BACKGROUND OF THE ACTION ......................................................3

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE APPROVED BY THE COURT...................................4

        A.      The Law Favors and Encourages Settlements ..........................................................4

        B.      The Settlement Is Procedurally Fair ........................................................................5

        C.      The Second Circuit's Standards Governing the Substantive Fairness of
                Class Action Settlements ..........................................................................................6

        D.      The Settlement Satisfies the Second Circuit Criteria for Approval.........................7

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Justifies the Settlement ..................................................................................7

                2.      The Reaction of the Class to the Settlement .................................................8

                3.      The Stage of the Proceedings and Discovery Completed.............................9

                4.      The Risk of Establishing Liability ..............................................................10

                5.      The Considerable Risk of Establishing Damages.......................................12

                6.      The Risks of Maintaining the Class Action Through Trial.........................15

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation.........................................15

                8.      The Ability of the Defendants to Withstand a Greater Judgment..............17

IV.     THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND
        REASONABLE AND SHOULD BE APPROVED BY THE COURT .............................17

V.      THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET
        AND THE CLASS SHOULD BE CERTIFIED.................................................................19

        A.      Numerosity, Commonality, and Typicality ............................................................19

        B.      Adequacy of Representation ...................................................................................20

        C.      Predominance of Common Issues and Superiority .................................................21

VI.     CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................19, 20, 21

*AUSA Life Ins. Co. v. Ernst & Young,*
    39 Fed. Appx. 667 (2d Cir. 2002)......................................................................16

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990)..................................................................................16

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978)..............................................................................18

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001) ..............................................................................15

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979)................................................................................16

*Carpe v. Aquila, Inc.,*
    No. 02-0388-CV-W-FJG, slip op. (W.D. Mo. Mar. 23, 2005)...........................13

*Chatelain v. Prudential-Bache Sec.,*
    805 F. Supp. 209 (S.D.N.Y. 1992) ...............................................................10, 15

*Cross v. 21st Century Holding Co.,*
    No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283
    (S.D.N.Y. Feb. 18, 2004) ....................................................................................20

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)................................................................................5, 9

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)....................................................................... *passim*

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005).............................................................................................14

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976).............................................................................................11

*Heyer v. N.Y. City Hous. Auth.,*
    No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089
    (S.D.N.Y. Apr. 28, 2006).....................................................................................10

**Page**

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
    (S.D.N.Y. Oct. 24, 2005) .............................................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)...........................15

*In re "Agent Orange" Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985) ............................................................18

*In re Alloy, Inc., Sec. Litig.*,
    No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
    (S.D.N.Y. Dec. 2, 2004)...........................................................................5

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................10, 17

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006)...................12, 20

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
    (E.D.N.Y. Nov. 15, 2005)..........................................................................4

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).........................................................9, 10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)......................................................................14

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981)), *aff'd in part and rev'd in part on other*
    *grounds*, 818 F.2d 179 (2d Cir. 1987) ............................................................18

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................6, 9, 18

*In re Holocaust Victim Assets Litig.*,
    413 F.3d 183 (2d Cir. 2001)......................................................................19

*In re Host Am. Corp. Sec. Litig.*,
    No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418
    (D. Conn. Oct. 18, 2007)..........................................................................20

**Page**

*In re Host Am. Corp. Sec. Litig.*,
    No. 3:05-cv-01250 (VLB), 2008 U.S. Dist. LEXIS 17405
    (D. Conn. Mar. 7, 2008)...........................................................................................8

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).............................................................................11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
    (S.D.N.Y. Sept. 29, 2003)..............................................................................12, 15

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006)...................................................................4, 5, 6, 8

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423
    (S.D.N.Y. Dec. 20, 2007).........................................................................................6

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................4

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .............................................................................11

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)............................... *passim*

*In re Priceline.com, Inc. Sec. Litig.*,
    No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538
    (D. Conn. July 20, 2007)..........................................................................................6

*In re Salomon Analyst Metromedia Litig.*,
    236 F.R.D. 208 (S.D.N.Y. 2006) ..........................................................................21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093
    (S.D.N.Y. May 1, 2008).................................................................................8, 9, 17

*In re Veeco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ..........................................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
    (S.D.N.Y. Nov. 7, 2007) ................................................................................ *passim*

Page

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001)..................................................................................21

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003),
    *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................17

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)..................................................................................17

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..............................13

*In re WorldCom, Inc. Sec. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................17

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,*
    364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................................7

*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000)....................................................................................4

*Kaufman v. Motorola, Inc.,*
    No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627 (N.D. Ill. Sept. 21, 2000).........................13

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................................11

*Maley v. Del Global Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................17, 19

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) ..........................................................................7

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972)..........................................................................5, 15, 16

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)...................................................................................11

*Plummer v. Chem. Bank,*
    668 F.2d 654 (2d Cir. 1982)....................................................................................9

*Robbins v. Koger Props.,*
    116 F.3d 1441 (11th Cir. 1997) ........................................................................14, 16

- v -

Page

*Sala v. Nat'l R.R. Passenger Corp.*,
    721 F. Supp. 80 (E.D. Pa. 1989) ...................................................................................8

*Schwartz v. Novo Industri A/S*,
    119 F.R.D. 359 (S.D.N.Y. 1988) ................................................................................10

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................7, 8

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
    (S.D.N.Y. Jan. 31, 2007)..............................................................................................4

*Teachers' Ret. Sys. of La. v. A.C.L.N.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)......................10

*W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ...................16

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................4, 16

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................4, 5

*Whalen v. Hibernia Foods PLC*,
    No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489 (S.D.N.Y. Aug. 1, 2005) ...................11

*Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.),
    *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000) .......................................16

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)..............................................................................4

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ...................................................................................11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77z-1 ......................................................................................................................9, 11
    §78j(b).........................................................................................................................12
    §78u-4(a)(3)(B)(i) .......................................................................................................20

**Page**

Federal Rules of Civil Procedure
    Rule 23(a).........................................................................................3, 19, 21
    Rule 23(a)(1)-(3) ..................................................................................19
    Rule 23(a)(4) ........................................................................................20
    Rule 23(b)(3)...............................................................................1, 3, 19, 21
    Rule 23(e).........................................................................................1, 4
    Rule 23(e)(2) .........................................................................................6

## SECONDARY AUTHORITIES

4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002)
    §11.45.....................................................................................................9

Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements,*
*2008 Review and Analysis* (Cornerstone Research 2009)..............................................16

Stephanie Plancich, Ph.D., Svetlana Starkyh, *2008 Trends in Securities*
*Class Actions* (NERA December 2008).........................................................................16

## I.     PRELIMINARY STATEMENT

Pursuant to Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure, Lead Plaintiffs, by and through their counsel ("Lead Counsel"), respectfully move this Court for a judgment approving the proposed settlement of the above-captioned class action (the "Action") and certifying the Settlement Class for the purpose of effecting the settlement. Lead Plaintiffs also move for an order approving the proposed Plan of Allocation of settlement proceeds.

Under the terms of the proposed settlement (the "Settlement"), set forth in the Stipulation of Settlement dated August 17, 2009 (the "Stipulation"), the Defendants have caused to be paid Three Million Eight Hundred Fifty Thousand Dollars ($3,850,000) in cash (the "Settlement Fund") into an interest-bearing escrow account on behalf of the Settlement Class, in exchange for the dismissal of all claims brought against the Defendants in this Action. A portion of the Settlement Fund will be used for the payment of taxes, notice and administrative costs, and for attorneys' fees and expenses. The remainder, the "Net Settlement Fund," will be distributed to Settlement Class Members, who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants"). Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice").

Lead Counsel respectfully submit that this Settlement is an excellent recovery for the Settlement Class, given the serious obstacles to a potentially higher recovery. This Settlement was reached by Lead Counsel, with the support of the Lead Plaintiffs. When viewed in light of the risks that Defendants could prevail on a renewed motion to dismiss, at summary judgment, or at trial, based on their defenses to loss causation, scienter, and damages, the Settlement is a good result for the Settlement Class. The Settlement saves the Settlement Class the considerable expense and delay

posed by continued litigation. As discussed below and in the Declaration of Debra J. Wyman in Support of (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, and (2) Award of Attorneys' Fees and Expenses ("Wyman Decl."), submitted herewith, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support approval of this Settlement.

On September 28, 2009, the Court entered the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which directed that a hearing be held to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). Pursuant to the Preliminary Approval Order, the Notice was mailed to over 164,000 potential Settlement Class Members commencing on October 6, 2009.[1] The Summary Notice was also published in the national edition of *Investor's Business Daily* on October 8, 2009. *See* Sylvester Decl., ¶11.

The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including (i) Lead Plaintiffs' estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund (as defined above) will be allocated among participating Settlement Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Settlement Class Members to opt-out or exclude themselves from the Settlement Class; and (v) the right and mechanism for Settlement Class Members to object to the Settlement.

The reaction of Settlement Class Members to the Settlement confirms Lead Plaintiffs' decision to resolve the Action against the Defendants in exchange for the payment of the Settlement

---

[1]    *See* ¶¶3-8 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action and the Proof of Claim and Release Form and B) Publication of the Summary Notice ("Sylvester Decl."), which was previously submitted to the Court. Docket No. 109.

Fund. As of the date preceding the filing of this Memorandum, which is before the deadline for the submission of objections or requests for exclusion, no objections have been filed to the Settlement or the Plan of Allocation. Only seven Settlement Class Members have submitted requests for exclusion from the proposed Settlement. Therefore, the reaction of the Settlement Class strongly supports the inference that the Settlement Class agrees that the Settlement and Plan of Allocation are fair, reasonable, and adequate.[2]

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiffs and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Settlement Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of this Settlement. In addition, the proposed Settlement Class meets all of the elements of Federal Rules of Civil Procedure 23(a) and (b)(3); therefore, the Court should grant final certification of the Settlement Class. Finally, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs' damage consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Settlement Class Members, and should also be approved by the Court.

## II.    HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Wyman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

---

[2]    If any timely objections are received, they will be addressed in a reply memorandum, which will be filed and served by December 8, 2009.

### III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

#### A.    The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court. A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007). While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would

-4-

undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.

1974); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As stated by the court in *Newman v. Stein*, 464

F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or
> other class action is a delicate one. . . . [W]e recognized that since "'the very purpose
> of a compromise is to avoid the trial of sharply disputed issues and to dispense with
> wasteful litigation', the court must not turn the settlement hearing 'into a trial or a
> rehearsal of the trial'."

*Id.* at 691-92 (citation omitted).

In sum, the Court is now asked to ascertain whether the Settlement is within a range that

responsible and experienced attorneys could accept, considering all relevant risk factors of litigation.

*Weinberger*, 698 F.2d at 74; *Grinnell*, 495 F.2d at 455. This range recognizes the uncertainties of

law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion.

### B.    The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by

experienced counsel after arm's-length negotiations, and great weight is accorded to the

recommendations of counsel, who are most closely acquainted with the facts of the underlying

litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc., Sec. Litig.*, No. 03 Civ.

1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004). A court may find the

negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations

and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective

representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)

(citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long

as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption

of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

- 5 -

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations. Wyman Decl., ¶¶31-32. *See also In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538, at *8 (D. Conn. July 20, 2007). In addition, no question exists that Lead Counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiffs' claims – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated. Thus, little doubt exists that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

## C.    The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Group*, 233 F.R.D. at 310 (citation omitted); Fed. R. Civ. P. 23(e)(2). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). All nine factors need not be satisfied. Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, this Settlement represents a very good recovery for the Settlement Class, and, in the judgment of Lead Counsel, there is serious doubt that a more favorable result would be achieved through continued litigation and trial. As such, the Settlement clearly warrants this Court's final approval.

**D.    The Settlement Satisfies the Second Circuit Criteria for Approval**

**1.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims advanced by Lead Plaintiffs involve numerous complex factual issues relating to kickbacks to brokers and the collusion with brokers to manipulate insurance prices and fix the bidding process to eliminate competition, which would require extensive discovery, including voluminous document review and many depositions, as well as expert discovery and testimony. In addition, the legal issues in this Action are equally as complex – proving materiality, scienter, causation, and damages – and would require expert testimony from both sides.

Here, counsel secured a certain recovery for the Settlement Class at a relatively early stage of the litigation, a result consistent with the purposes of the Federal Rules of Civil Procedure. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (court complimented counsel for promptly resolving litigation).

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation. Many hours of the

Court's time and resources have also been spared. Even if the Settlement Class could recover a larger judgment after a trial, the additional delay of trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

A settlement for $3.85 million in cash at this juncture results in an immediate and substantial recovery without the considerable risk, expense, and delay of trial. Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

**2.    The Reaction of the Class to the Settlement**

The reaction of the Settlement Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233 F.R.D. at 311-12. At least one court has noted that the reaction of the class to a settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989); *See In re Host Am. Corp. Sec. Litig.*, No. 3:05-cv-01250 (VLB), 2008 U.S. Dist. LEXIS 17405, at *7 (D. Conn. Mar. 7, 2008) ("The Court therefore concludes that the second *Grinnell* factor is of greatest importance in approving the class

- 8 -

action settlement."); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21. Here, in response to a wide-ranging Court-approved notice program, not a single Settlement Class Member has objected to date, and only seven have requested exclusion from the Settlement Class. Thus, the reaction of the Settlement Class to date underscores the propriety of the Settlement and provides support for approval of the Settlement.

### 3.    The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002). As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *22-*23 (same).[3]

Here, Lead Counsel negotiated the Settlement only after conducting an extensive factual investigation and analysis relating to the events and transactions alleged in the Consolidated

---

[3]    In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is decided.

Complaint for Violations of Federal Securities Laws (the "Complaint"). Lead Counsel reviewed

scores of publicly available documents to gain an understanding of the insurance industry and The

Hartford's business practices. Lead Counsel also researched the applicable law with respect to Lead

Plaintiffs' claims and the Defendants' potential defenses. Wyman Decl., ¶¶5-7. Thus, Lead

Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual

defenses that Defendants would likely raise at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N.*, No. 01-

CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (finding action had advanced to

a stage where parties "'have a clear view of the strengths and weaknesses of their cases'") (citation

omitted); *see also Heyer v. N.Y. City Hous. Auth.*, No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS

25089, at *9 (S.D.N.Y. Apr. 28, 2006) (although limited discovery was completed before settlement

negotiations began, familiarity of counsel for all parties with case justifies settlement). Thus, Lead

Counsel had more than sufficient information to intelligently negotiate the terms of the Settlement

that is before the Court for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426

(S.D.N.Y. 2001); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992)

(noting "'the absence of formal discovery has not . . . prevented consideration of settlement'")

(quoting *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988)). Therefore, this

Court should find that this factor supports the Settlement.

### 4.    The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Settlement

Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.

*See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German*

*Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believe that the Lead Plaintiffs could survive

Defendants' renewed motion to dismiss and, if successful, a motion for summary judgment, it is also

clear that ultimate success is not assured, and this Settlement, when viewed in light of the risks of

proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable."). This is even more so today in this post-PSLRA environment amid defendants' constant attempts to push the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

Lead Plaintiffs faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Exchange Act of 1934 (the "Exchange Act"). To prevail on these claims, Lead Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the purchase of securities and that Defendants intentionally engaged in this conduct for the purpose of misleading investors.[4] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Defendants have argued that Lead Plaintiffs would not be able to prove the Defendants knew that the statements at issue were false when made or that there was any other indicia of scienter. Wyman Decl., ¶47. Defendants claimed that there was no evidence of conscious or reckless misconduct because Defendants believed that the contingent commission arrangements were a proper and acceptable practice in the industry. *Id.*

---

[4]    Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489, at *6 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard.

Lead Plaintiffs vigorously disagreed with these arguments, but if the Court or fact finder agreed with Defendants, the case would end with the Settlement Class receiving nothing. Based on the defenses raised by Defendants thus far, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at \*39 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

In addition, the Lead Plaintiffs faced the risks of establishing liability posed by conflicting testimony and evidence.  Moreover, there was no certainty that formal discovery would tend to support or disprove Lead Plaintiffs' allegations.

The risks of establishing liability posed by conflicting testimony and evidence would be exacerbated by the following risks inherent in all shareholder litigation under §10(b), including the unpredictability of a lengthy and complex jury trial – the risk that witnesses could suddenly become unavailable or jurors could react to the evidence in unforeseen ways; the risk that the jury would find that some or all of the alleged misrepresentations and omissions were not material during part or all of the Settlement Class Period; and the risk that the jury would find that Defendants reasonably believed in the appropriateness of their actions at the time and that the Lead Plaintiffs failed to prove that Defendants acted with scienter.

### 5.    The Considerable Risk of Establishing Damages

Even if they successfully established liability, Lead Plaintiffs also faced substantial risk in proving the existence and the amount of damages. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at \*11-\*12 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases).  In order to prevail on their Exchange Act claims, Lead Plaintiffs would be required to prove that the Defendants' false and misleading statements inflated the price of The Hartford securities, and would be required to prove the amount

of the artificial inflation. Lead Counsel calculated the artificial inflation in the market price of The Hartford securities that in their opinion was attributable to the alleged wrongdoing. This figure assumes that every element of the Settlement Class's damage theory is accepted by a jury as being correct and recoverable. It also assumes that the Settlement Class Period would remain as alleged. As such, its viability as an actual calculation for damages could be affected by many factors that arise in the Action, such as Defendants' rebuttals and defenses to Lead Plaintiffs' damage calculations and expert testimony.

The presentation of damages is a complex matter that would require expert testimony. As a result, Lead Counsel already know that the Settlement Class would ultimately face a "battle of experts" – a battle in which no party is ever assured they will prevail. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiffs' damages model is admissible – and only then may a jury determine whether Lead Plaintiffs' or Defendants' model is more accurate. The Settlement Class was by no means assured of a ruling in their favor. *See, e.g., Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, slip op. (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony);[5] *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with Lead Plaintiffs' expert, or merely find Defendants' expert more persuasive.[6]

---

[5]     All unreported authorities referred to herein are attached hereto.

[6]     *See, e.g., PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by

The Defendants would attempt to convince the jury to find that there were no damages or that only a fraction of the amount of damages the Lead Plaintiffs asserted were causally related to the alleged false and misleading statements. *See, e.g., Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict). Lead Plaintiffs faced an uphill battle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiffs and the Settlement Class to suffer economic loss. Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." Defendants viewed as one of their defenses the fact that Lead Plaintiffs had not, and could not, properly account for the damages attributable to Defendants' alleged misrepresentations. Specifically, Defendants argued that Lead Plaintiffs would be unable to establish that the decline in the price of The Hartford securities was related to any revelation about The Hartford's payment of contingent commissions because this information was already disclosed to the market prior to the announcement of the New York Attorney General's investigation and therefore could not have caused the drop in The Hartford's stock price. Although Lead Plaintiffs countered these contentions, significant risks of proving loss causation as to damages for the entirety of the Settlement Class Period existed.

As a result of the aforementioned considerations, the likelihood of proving damages, even assuming the Settlement Class prevailed on the liability issue, is somewhat difficult. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *29. As a result, this factor also weighs in favor of the Settlement.

---

actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

### 6.    The Risks of Maintaining the Class Action Through Trial

Here, a class had not yet been certified. Therefore, risk existed that the Court would not certify the class as defined. In addition, even if a class were certified upon Lead Plaintiffs' motion (which Defendants would certainly contest), there is no assurance of maintaining class status, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). Absent settlement, Lead Counsel expect that Defendants would oppose class certification and thereafter would seek to have any class certified by the court decertified. The Settlement avoids any uncertainty with respect to these issues.

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33. The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). Nevertheless, this Settlement, which represents approximately 5.1% of Lead Plaintiffs' estimate of **maximum** provable damages, exceeds the average recovery in other shareholder cases. *See* Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2008 Review and Analysis*, at 6 (Cornerstone Research 2009) (settlements as a percentage of "estimated damages" averaged 3.2% in 2008); Stephanie Plancich, Ph.D., Svetlana Starkyh, *2008 Trends in Securities Class Actions*, at 14 (NERA December 2008) (median ratio of settlement value to investor losses in 2008 was 2.7%).

Moreover, even if the Lead Plaintiffs prevailed at trial, risks to the Settlement Class would remain. For example, in *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990), the class won a jury verdict and a motion for J.N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed. *See also W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (reversing $87 million judgment after trial); *Robbins*, 116 F.3d at 1449 (reversing on appeal $81 million jury verdict and dismissing securities action with prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir. 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

In light of the complex legal and factual issues present in this Action, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of a

settlement is clearly apparent. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

### 8. The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. The fact that The Hartford *could* have paid more money does not render the Settlement unreasonable. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *23 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (citation omitted). "Where, as here, the other Grinnell factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *Id.* at *23-*24.

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## IV. THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also WorldCom*, 388 F.

- 17 -

Supp. 2d at 344 (same). Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with a damage specialist, ensuring its fairness and reliability. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account not only when Settlement Class Members purchased and when and whether Settlement Class Members sold their The Hartford securities, but the type of security they purchased. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions and which security they purchased. Thus, "if one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987).

This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass distributions to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the

securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001).
Otherwise, certain class members may receive an inequitable windfall, to the detriment of others.
*PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully
submit that it should be approved by the Court. It should be noted that not one objection to the Plan
of Allocation has been filed to date, which also supports approval by the Court. *See Veeco*, 2007
U.S. Dist. LEXIS 85629, at *40; *Maley*, 186 F. Supp. 2d at 367.

## V. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

The parties have stipulated to certification of the Settlement Class for settlement purposes,
and Lead Plaintiffs' memorandum of law in support of their unopposed motion for preliminary
approval of the Settlement contained an extensive discussion on the appropriateness of certifying the
proposed Settlement Class. *See* Docket No. 106.[7] The ultimate decision regarding certification rests
with the Court. In its September 28, 2009 Preliminary Approval Order, the Court conditionally
certified the Settlement Class for purposes of settlement. Because all the requirements for class
certification have been met, *see* Federal Rules of Civil Procedure 23(a) and (b)(3), and in light of the
substantial benefits the Settlement confers on the Settlement Class, Lead Plaintiffs respectfully
request that the Court now grant final class certification for the purposes of the Settlement.

### A. Numerosity, Commonality, and Typicality

The Settlement Class meets the numerosity, commonality, and typicality standards of Rule
23(a)(1)-(3). Over 164,000 copies of the Notice were sent to potential Settlement Class Members
who purchased The Hartford securities between August 6, 2003 and October 13, 2004. *See*

---

[7]     The use of a settlement class allows the parties to concede, for purposes of settlement
negotiations, the propriety of a class action. The Supreme Court has expressly approved the use of
this device. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

Sylvester Decl., ¶¶3-8. *See also Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283, at *4 (S.D.N.Y. Feb. 18, 2004) ("[c]ommon sense dictates" that class members in securities cases exceed 100). Moreover, there are substantial questions of law and fact common to all Settlement Class Members (*e.g.*, whether Defendants violated the federal securities laws and whether Members of the Settlement Class sustained damages as a result of the misrepresentations and/or omissions, and the extent of those damages).

In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities cases. *See also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in the context of securities fraud litigation."). Further, Lead Plaintiffs' claims are "typical" of other Settlement Class Members' claims because they purchased The Hartford securities during the period of asserted price inflation and thus have alleged damages similar to other Settlement Class Members. *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418, at *14-*15 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts in same manner against all class members).

### B.    Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires Lead Plaintiffs to demonstrate that (1) there is no conflict of interest between the Lead Plaintiffs and the other Settlement Class Members; and (2) Lead Counsel are qualified, experienced, and capable of conducting the Action. *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *20-*21. Here, this Court has already designated the proposed class representatives as Lead Plaintiffs pursuant to the PSLRA, which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Furthermore, Lead Plaintiffs have retained highly competent counsel

with extensive experience litigating complex securities class actions. Thus, Lead Plaintiffs and their counsel have diligently advanced the interests of the Settlement Class.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism be superior to other methods of adjudicating the controversy. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). In this Action, both of these requirements are satisfied. First, in order to satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. Here, the issues of liability and causation are common to all Members of the Settlement Class and clearly predominate over any individual issues. Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in The Hartford securities. *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 218 (S.D.N.Y. 2006) ("[i]t is beyond dispute . . . that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities . . . common issues will predominate over individual ones").

In light of the foregoing, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and thus, the Court should certify this Settlement Class for purposes of effecting the Settlement.

### VI.    CONCLUSION

For the foregoing reasons, the Settlement and Plan of Allocation of the settlement proceeds are fair, reasonable, and adequate and should be approved by the Court. Additionally, because all of

the requirements for certification have been met, Lead Counsel respectfully submit that the Court

should certify the Settlement Class for settlement purposes.

DATED:  November 24, 2009

Respectfully submitted,

SCOTT + SCOTT LLP
DAVID R. SCOTT (CT16080)
ERIN GREEN COMITE (CT24886)
108 Norwich Avenue
Colchester, CT  06415
Telephone:  860/537-3818
860/537-4432 (fax)

Liaison Counsel

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
JOY ANN BULL
TOR GRONBORG (phv0044)
DEBRA J. WYMAN


                              s/ Joy Ann Bull
_____
                        JOY ANN BULL

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

S:\Settlement\Hartford Financial.set\BRIEF SETTLEMENT 00063206.doc

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 24, 2009.

s/ JOY ANN BULL
JOY ANN BULL

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:joyb@csgrr.com

# Mailing Information for a Case 3:04-cv-01740-CFD

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Elias A. Alexiades**
  elia@alexiades.com

- **Jack C. Auspitz**
  jauspitz@mofo.com

- **Joy Ann Bull**
  joyb@csgrr.com

- **Erin Green Comite**
  ecomite@scott-scott.com,cmcgowan@scott-scott.com,jderrico@scott-scott.com

- **Timothy Andrew Diemand**
  tdiemand@wiggin.com

- **Tor Gronborg**
  torg@csgrr.com,e_file_sd@csgrr.com

- **Patrick A. Klingman**
  pklingman@sfmslaw.com

- **Jamie A. Levitt**
  jlevitt@mofo.com

- **James E. Miller**
  jmiller@sfmslaw.com

- **Kyle W. K. Mooney**
  KMooney@mofo.com

- **Shane Rowley**
  srowley@faruqilaw.com

- **David Randell Scott**
  drscott@scott-scott.com,cmcgowan@scott-scott.com,efile@scott-scott.com

- **Debra Wyman**
  debraw@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Manual List

*Steve Staehr v. The Hartford Financial Services Group, Inc., et al.*
Civil Action No. 3:04-CV-1740-CFD

Marc A. Topaz
BARROWAY TOPAZ KESSLER
    MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087

Samuel H. Rudman
COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747

Arthur L. Shingler III
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego, CA  92101